IN THE UNITED STATES DISTRICT COURT FOR MARYLAND

-----------------------------------------------------

| | |
|---|---|
| Patrick Smith | * Case No.: 1:18-cr-00017-ELH-1 |
| | * |
| v. | * Dated: November 17, 2022 |
| | * |
| United States | * Pro-Se |

**************************************************************************

REPLY TO THE GOVERNMENT OPPOSITION TO MR. SMITH'S MOTION
TO THE NEWLY DISCOVER EVIDENCE OF A ACTUAL CONFLICT OF
INTEREST THAT HIS ATTORNEY MR. PURPURA REPRESENTED HIM
UNDER PURSUANT TO RULE 60(b) OR WHAT EVER MATTER THIS
COURT AND JUSTICE WARRANTS THIS MOTION TO BE ADDRESS ON
THE MERITS OF THE CONFLICT OF INTEREST.

**************************************************************************

Herecome the Petitioner Patrick Smith #63919-037, in the proper person , presently incarcerated at the Federal Prison Camp, FCI-Talladega PMB 2000, Talladega, Alabama 35160, do move this Court to file his reply to the government response in opposition to Mr. Smith's motion to the newly discover evidence of a actual conflict of interest that his attorney Mr. Purpura, represented him under pursuant to Rule 60(b) or what ever matter this Court and Justice warrants this motion to be address on the merits of the conflict of interest.

I.   BACKGROUND
---------------

In May 2019, while under the influence of a cocktail of medications Mr. Smith, pled guilty to conspiracy to distibute one kilogram or more of heroin in violation of 21 U.S.C. 846. ECF No. 563. On August 21, 2019, the Court sentenced Mr. Smith to 120 months imprisonment. ECF No. 645. After sentencing, Mr. Smith filed a timely 2255 motion, which he amended or supplemented. Judge Hollander of the District Court denied Mr. Smith's 2255 motion without a hearing and refused or denied the granting of a "COA" Certificate of Appealability. Mr. Smith, in the proper-person as Fourth Circuit Court of Appeals, to issue a "COA". The Fourth Circuit Court of Appeals, has not of todays date granted Mr. Smith an actual appeal, so Mr. Smith do not have an appeal pending at this time. Mr. Smith discover that his attorney had actually represented him under an actual and active conflict of interest and filed a motion to this court on September 23, 2022, pursuant to Rule 60(b) or what ever matter this Court

and Justice warrants this motion to be address on the merits. The Court gave the government/USAO until November 3, 2022 to respond to Mr. Smith motion. Mr. Smith is now filing the reply to the USAO response in opposition to his motion. Which is ripe for this Court to rule on the merits of the "conflict of interest" issue that Mr. Smith has raised in his motion.

II.    STATEMENT OF FACTS AND BACKGROUND OF THE ACTUAL CONFLICT OF INTEREST IN THIS CASE.

Agent/Officer Daniel Thomas Hersl, who was a Baltimore City Police Officer and a member of the "GTTF" Gun trace Task Force. Agent Hersl was indicted for Rico Conspiracy 18:1962(d); Rico Aiding & Abetting 18:1962(c Hobbs Act Robbery 18:2(5s); Possession of a Firearm in Furtherance of a Crime of Violence, 18:2 Aiding & Abetting(6s), among other charges. Agent Hersl, was represented by William B. Purpura, Jr. from the law office of William B. Purpura, located at Eight E. Mulberry Street, Baltimore, Maryland 21202, See Reply Exhibit #1 Docket Entree for Case #1:17-cr-00106-CCB-3, United States v. Daniel Thomas Hersl.

Agent Hersl, was indicted along with other, Momodu Bondeva Kenton Gondo, Evodio Calles Hendrix, Wayne Earl Jenkins, Jemell Lamar Rayam, Marcus Roosevelt Taylor, Maurice Kilpatrick, Other officer was later indicted as a part of the Gun Trace Task Force Scandal. On March 9, 2017, Mr. Purpura, enter his "Notice of Appearance of Agent Hersl". On June 22, 2017, the was a superseding indictment against Agent Hersl and others. There was numerous motions filed on Agent Hersl behalf by Mr. Purpura, and one of the things that Mr. Purpura did was enter into a plea negoiation for Agent Hersl, where he was interview and debrief by the FBI and "USAO" United States Attorney's Office, where Agent Hersl implicated Agent Craig Jester, and, others in the Gun Trace Task Force Scandal. For whatever reason at some part those negoiation broke off and Agent Hersl, went to trial, was convicted and received an 18 year sentence as a part of the "GTTF" Gun Trace Task Force Scandal. See Reply Exhibit #1.

Mr. Smith was indicted in Case No. 1:18-cr-00017-ELH-1. It stem from the investigation by the "GTTF" Gun Trace task Force, and it was Agent Craig Jester, of the "GTTF" that applied for the warrant to start tracking a  UI #9316, that they alleged was being used by Mr. Smith, the application was applied for on September 15, 2017. In was from this date

that they started tracking Mr. Smith. It was members of this task force that raided Mr. Smith residence on October 26, 2017. Mr. Smith, was arrested on April 5, 2018 in the above listed case. In May 2018, Mr. Purpura, was retain to represent Mr. Smith for $90,000 in this case. For whatever reason, the Docket Entree shows that Mr. Purpura enter his appearance on June 8, 2017, as reflected in Reply Exhibit #2. It was Mr. Purpura, urging of Agent Hersl, to enter into the plea negoiations with the FBI and USAO, to implicate member of the "GTTF" Gun Trace Task Force, in the illegal and corrupt acts as a part of that scandal. Mr. Purpura, never once inform Mr. Smith, that he was representing Agent Hersl or any- one else of the "GTTF", the same same task force that was a part of Mr. Smith's arrest and indictment.

In short both Reply Exhibit #1 and Reply Exhibit #2, shows that Mr Purpura, was representing both Mr. Patrick Smith and Agent Hersl at the same time. At no point in the case, did Mr. Smith, ever waive the conflict of interest in his case, because he has just recently discover that there was an actual & active conflict of interest in this case. As soon as he became aware of it he file a motion to this court, asking the court to address the "conflict of interest" issues on its merits. The Government filed its response in oppostion to Mr. Smith, motion; but never bother to address the "conflict of interest" issue on its merits, and the only rea- son for this failure, is because there is no defense to the "conflict of interest" issue that Mr. Smith has raised in his motion, and Mr. Smith will show you exactly why this issue is ripe for this Court to entertain or address on merits of this issue in his arguments.

III.    ARGUMENTS
----------------

Maryland Rules of Professional Conduct, Client - Lawyer Relation- ship Rule 1.7, Conflict of Interest: General Rule:
(a) Except as provided in section (b) of this Rule, an attorney shall not represent a client if the representation involves a conflict of interest. A conflict of interest exists if:
(1) the representation of one client will be directly adverse to another client; or
(2) there is a significant risk that the representation of one or more clients will be materially limited by the attorney's responsibilities to

(4)

another client, a former client or a third person or by a personal
interest of the attorney.

(b) Notwithstanding the existence of a conflict of interest under section
(a) of this Rule, an attorney may represent a client if;

(1) the reasonably believes that the attorney will be able to provide
competent and diligent representation to each affected client;

(2) the representation is not prohibited by law;

(3) the representation does not involve the assertion of a claim by one
client against another client representation by the attorney in the same
litigation or other proceeding before a tribunal; and

(4) each affected client gives informed consent, confirmed in writing.

Loyalty and independent judgement are essential elements in the
attorney's relationship to a client. Conflicts of interest can arise from
the attorney's responsibilities to another client, a former client or a
third person or from the attorney's own interests. For specific Rules re-
garding certain conflict of interest, see Rule 19-301.7 (1.8). For the
definitions of "informed consent" and "confirmed in writing, see Rule 19-
301.0 (f)and (b) (1.0).

Resolution of a conflict of interest problem under this Rule re-
quires the attorney to: (1)- clearly identify the client or clients, (2)
determines whether a conflict of interest exists; (3) decide whether the
representation may be undertaken despite the existence of a conflict, i.e
whether the conflict is consentable; and (4) if so, consult with the
clients affected under section (a) of this Rule and obtain their informed
consent, confirmed in writing. The clients affected under section (a) of
this Rule include both of the clients referred to in subsection (a)(1) of
this Rule and the one or more clients whose representation might be mater
-ially limited under subsection (a)(2) of this Rule.

A conflict of interest may exist before representation is under-
taken, in which event the representation must be declines, unless the
attorney obtains the informed consent of each client under the condiction
of section (b) of this Rule. To determine whether a conflict of interest
exists, an attorney should adopt reasonable procedures, appropriate for
the size and type of firm and practice, todetermine in both litigation
and non-litigation matters the persons and issues involved. See all Com-
ment to Rule 19-305.1 (5.1). Ignorance caused by a failure to institute
such procedures will not excuse an attorney's violation of this Rule. As

to whether a client-attorney relationship exists or, having once been established, is continuing, see Comment to Rule 19-301.13 (1.3) and Scope

If a conflict arises after representation has been undertaken, the attorney ordinarily must withdraw from the representation, unless the attorney has obtained the informed consent of the client under the conditions of section (b) of this Rule. See Rule 19-301.16 (1.16).

Identifying Conflict of Interest: Directly Adverse-- [6] Loyalty to a current client prohibits undertaking representation directly adverse to that client without that client's imformed consent. Thus, absent consent, an attorney may not act as an advocate in one matter against a person the attorney represents in some other matter, even when the matters are wholly unrelated. The client as to whom the representation is directly adverse is likely to feel betrayed, and the resulting damage to the client-attorney relationship is likely to impair the attorney's ability to represent the client effectively. In addition, the client on whose behalf the adverse representation is undertaken reasonably may fear that the attorney will pursue that client's case less effectively out of defence to other client, i.e., that the representation may be materially limited by the attorney's interest in retaining the current client. Similarly, a directly adverse conflict may arise when an attorney is required to cross-examine a client who appears as a witness in a lawsuit involving another client, as when the testimony will be damaging to the client who is represented in the lawsuit.

Prohibited Representaions [14] Ordinarily, clients may consent to representation notwithstanding a conflict. However, as indicated in section (b) of this Rule, some conflicts are nonconsentable, meaning that the attorney involved cannot properly ask for such agreement or provide repre-sentation on the basis of the client's consent. When the attorney is representing more than one client, the question of consentability must be resolved as to each client. [16] Subsection (b)(2) of this Rule describes conflicts that are nonconsentable because the representation is prohibited by applicable law. For example, in some states substantive law provides that the same attorney may not represent more than one defendant in a capital case, even with the consent of the clients, and under federal cri-minal statutes certain representations by a former government attorney are prohibited, despite the informed consent of the former client. In add-ition, decisional law in some states limited the ability of a governmen-

tal client, such as a municipality, to consent to a conflict of interest. [17] Subsection (b)(3) of this Rule describes conflicts that are non-consentable because of the institutional interest in vigorous development of each client's position when the clients are aligned directly against each other in the same litigation or other proceeding before a tribunal. Whether clients are aligned directly against each other within the meaning of this subsection requires examination of the context of the proceed-ing. Although this subsection does not preclude an attorney's multiple representation of adverse parties to a mediation (because mediation is not a proceeding before a "tribunal" under Rule 19-301.0(o)(1.0)) . such representation may be precluded by subsection (b)(1) of this Rule.

Informed Consent-- [18] Informed consent requires that each affected client be aware of the relevant circumstances and of the material and reasonably foreseeable ways that the conflict could have adverse effects on the interest of that client. See Rule 19-301.0 (f) (1.0) (informed consent). The information required depends on the nature of the conflict and the nature of the risks involved. When representation of multiple clients in a single matter is undertaken, the information must include the implications of the common representation, including possible effects on loyalty, confidentiality and the attorney-client privilege and the advantages and risks involved. See Comments [30] and [31] (effectof common representation on confidentiality).

Lawyer's Interest, The lawyer's own interest should not be permitt-ed to have adverse effect on representation of a client. For example, a lawyer's need for income should not lead the lawyer to undertake matters that cannot be handled competently and at a reasonable fee. See Rules 1.1 and 1.5. If the probity of a lawyer's own conduct in a transaction is in serious question, it may be difficult or impossible for the lawyer to give a client detached advice. A lawyer may not allow related business interests to affect representation.

Smith, ask that this Court look at both Maryland & Federal Rule - 1.7 and the Comments. This Rule 1.7, lets us know that both Mr. Purpura, and, the USAO, should have brought this matter to the attention of both Mr. Smith, as well as Agent Hersl. Mr. Purpura, and, the USAO should have present the "conflict of interest" issue to the attention of the District Court, in both cases of these two clients, failure to do so is a clear violation, that demands a reversial and at least an evidentiary hearing.

Mr. Smith, would like to bring the Court's attention to another rule. Rule 44, which was intended to be mere codification of what had already been established by federal decisions. Spevak v. United States, 158 F.2d 594 (4th Cir. 1946), cert. denied, 330 U.S. 821, 67 S.Ct. 771, 91 L.Ed. 1272 (1947). Rule 44 is designed to conform to pronouncement in Sixth Amendment to Constitution, as interpreted by federal courts prior to enactment of Federal Rules of Criminal Procedure in 1946, that in all criminal prosecutions, accused shall enjoy right to assistance of counsel United States v. Washington, 341 F.2d 277 (3rd Cir.), cert. denied, 382 U.S. 850, 86 S.Ct. 96, 15 L.Ed. 2d (1965). General language in Johnson v. Zerbst, 304 US 458, 82 L.Ed 1461, 58 S.Ct. 1019, 146 ALR 357 (1938; Wainwright v. Sykes, 433 US 72, 53 L.Ed 2d 594, 97 S.Ct. 2497, as stated in Jiminez v. Estelle (CA5 Tex) 557 F.2d 506, and Rule 44 must be read 'in light of their fundamental purpose to provide guiding hand of counsel at every step where accused who is without counsel may be prejudice. McGill v. United States, 348 F.2d 791, 121 U.S. App. D.C. 179 (D.C. Cir, 1965). Right to counsel is substantial right and Rule 44 provides for implementation by court to make sure that constitutional rights of defendant are protected and enforced. United States v. Haug, 33 Lab. Cas. (CCH) 0981, 21 F.R.D. 22, 40 L.R.R.M. (BNA) 2307, 33 Lab. Cas. (CCH) P70981 (D. Ohio 1957), aff'd 39 Lab. Cas. (CCH) 6218, 274 F.2d 885, 45 L.R.R.M. (BNA) 2895, 39 Lab. Cas. (CCH) P66218 (6th Cir. 1960).

In federal court right to counsel extends to all offenses, petty and serious alike. United States v. White, 529 F.2d 1390 (8th Cir.1976). Rule 44 guarantee of right to counsel applies to all criminal actions in federal court. United States v. Leavitt, 608 F.2d 1290 (9th Cir. 1979). These rules and laws have been in effect longer then Mr. Smith, has been born, and it still governs the Court today. A lawyer who is representing a client under a actual & active "conflict of interest" is like not having a lawyer at all, to protect his/her constitutional rights. Without consenting to a conflict of interest, or, waiving the right to representation then Mr. Smith's constitutional rights to the Sixth Amendment has been violated.  As well as Agent Hersl's.

It is true that Mr. Smith, raised this "conflict of interest" issue pursuant to Rule 60(b) "or" what ever matter this court and justice warrants this motion to be address on the merits of the conflict of interest.

Before Mr. Smith, gets into all of the vehicles that he can raise the "conflict of interest" issue on, allow him to tell you why this issue can be r aised pursuant to Rule 60 (b), and, why there is no merit to the government/USAO response.

Under Rule 60(b) there is a section called "Fraud" and I am more then delighted to quote this for the Court. It states as follow: "Fraud, whether intrinsic or extrinsic, misrepresentation, or other mis- conduct of an adverse party are express  grounds for relief by motion under  amended subdivision (b). There is no sound reason for their exclu- sion. The incorportation of fraud and the like within the scope of the rule also removes confusion as to the proper procedure. It has been held that relief from a judgment obtained by extrinsic fraud could be secured by motion within a "reasonable time," which might be after the time stat- ed in the rule had run. Fiske v. Buder, 125 F.2d 841 (8th Cir. 1942); see also inferentially Bucy v. Nevada Construction Co., 125 F.2d 213 (9th Cir 1942). On the other hand, it has been suggested that in view of the fact that fraud was omitted from original Rule 60(b) as a ground for relief, an independant action was the only proper remedy. Commentary, Effect of Rule 60(b) on Other Methods of Relief From Judgment, 1941, 4 Fed Rules Serv 942, 945. The amendment settles this problem by making fraud an ex- presss ground for relief by motion; and under the saving clause, fraud may be urged as a basis for relief by independant action insofar as estab -lished doctrine permits. See Moore and Rogers, Federal Relief from Civil Judgment, 1946, 55  Yale L. J. 623, 653-659; 3 Moore Federal Practice, 1938, 3267 et  seq. And the rule expressly does not limit the power of the court, when fraud has been perpetrated upon it, to give relief under the saving clause. As an illustration of this situation, see Hazel-Atlas Glass Co. v. Hartford Empire Co., 322 U.S. 238, 88 L.Ed. 1250, 64 S.Ct. 997 (1944)."

Mr. Smith, then went to the Black's Law Dictionary, the Eighth Edition, Ninth Edition, and, the Tenth Edition, to define the word "fraud", it states as follow: "Fraud" , a knowing misrepresentation of truth or concealment of a material fact to induce another to act to his or her detriment. Fraud in usa, a tort but in some cases (esp. when the conduct is willful. (2)- A misrepresentation made recklessly without belief in its truth to induce another person to act. (3)- A tort arising from a knowing misrepresentation, concealment of material facts or reck-

less misrepresentation made to induce another to act to his or her detriment. (4)- Unconscionable dealing, esp. in contract law, the unfair use of the power arising out of the parties relatives positions and resulting in an unconscionable bargain.

Extrinsic Fraud, is defined as follow: (1)- Fraud that is collateral to the issues being considered in the case;specif., intentional misrepresent -ation or deceptive behavior outside the transaction itself (whether a contract or law suit), depriving one party of informed consent or full participation. For example a person might engage in extrinsic fraud by convincing a litigant not to hire counsel or answer by dishonestly saying the matter will not be pursued, - Also termed collateral fraud, (2)- Fraud that prevents a person from knowing about or asserting certain rights.

"Intrinsic Fraud" is defined as Fraud that pertains to an issue involved in a judicial proceeding. Examples include the use of fabricated evidence, perjured testimony and false receipts or other commerical documents.

"Fraud In Law" is defined as: Fraud that is presumed under the cir -cumstances, without regard to intent, usu, through statutorily created inferences. Fraud may be presumed, for example, when a doctor transfer assets and thereby impairs creditors effort to collect sums due. This type of fraud arises by operation of law, from conduct that, if sanctioned would (either in the particular circumstance or in common experience) secure an unconscionable advantage, irrespective of evidence of an actual intent to defraud - Also termed constructive fraud.

"Constructive Fraud" is defined as follow: (1)- Unintentional deception or misrepresentation that causes injury to another. (2)- See fraud in law, Also termed legal fraud; fraud in comtemplation of law; equitable fraud, fraud in equity.

" In equity law the term fraud has a wider sense, and includes all acts, ommission, or concealments by which one person obtain an advantage against conscience over another, or which equity or public policy forbids as being to another's prejudice; as acts in violation of trust and confidence. This is often called constructive, legal, or equitable fraud, or fraud in equity." Encyclopedia of Criminology, 175 (Vernon C. Branham & Samuel B. Kutash eds., 1949), s.v. "Fraud."

(10)

The facts and the evidence in this case is clear and undisputed, by Mr. Purpura; as well as the government/USAO, the "conflict of interest " was never reveal to Mr. Smith in this case.  Mr. Smith, never waive the "conflict of interest", orally or in writing, these a re facts. The is no documental that Mr. Smith sign and waive the "conflict of Interest" There is no record, recording or transcript of Mr. Smith waiving this "conflict of interest", or that it was brought to the attention of Judge Hollander, and this Court. Rule 1.7, is clear what has to be done, when a Conflict of Interest arises, and the facts and evidence shows that none of that was done in Mr. Smith's, case. Rule 60(b) is just as clear, that the Court can entertain and has jurisdiction or authority to hear and rule on the merits, is there is fraud. By the Black's Law Dictionary, itself it defin es "fraud" as a misrepresentation, concealment or an ommission.  Mr. Purpura nor the government/USAO; never inform this Court of the conflict. Whether this concealment or omission was done intentional or unintentional, it is still fraud, and the Court has a right to address the issue under Rule 60 (b), the route that Mr. Smith, move the Court to do so. There is no pro- cedure bar, as the government/USAO, alleges in its response in opposition to Mr. Smith's motion. This matter is ripe for this Court and Mr. Smith, prays that the Court will rule on the merits of this issue. Mr. Smith, ask the Court to please take notice that the only reason that the USAO, did not resond to the "conflict of interest" issue is because they do not have a defense to it, So I believe it is right to say that Mr. Purpura, representation of Mr. Smith, was a actual & active, "conflict of interest that demands that the case against Mr. Smith to be dismiss. It was this Court and Judge Hollander, who spoke so highly about the competence of Mr. Purpura, representation, and the AUSA handling of Mr. Smith's case. If they are such competent attorney's as the Court alleges, would they not brought this matter to the attention of the Court and Mr. Smith. When atleast five competent attorney's, failed or refused to address this matter to the Court, the Court should presume that they conceal, omitted, and withheld this from the Court, intentionally. Which is "fraud", by the definition of the Black's Law Dictionary, which I believe is a reference in which I believes the Court use.

Another reason or scenario, Mr. Smith, believes that this matter is ripe for this Court, is the title of his motion itself. Mr. Smith, said he was bringing the motion pursuant to Rule 60(b) or what ever matter

(11)

this court and justice warrants this motion to be address on the merits of the conflict of interest. Mr. Smith, has said or stated that more then once in this reply; for he wanted to make sure he protected himself, by asking the Court to bring this "conflict of interest" issue, pursuant to what ever vehicle that the Court can use to address the conflict of interest" issue on the merits. In other words Mr. Smith, was asking the Court to correctly recharacterize the motion to something that gives the Court jurisdiction to rule on the merits of his issue, if by chance Rule 60(b) was not the correct vehicle. I think and believe that Mr. Smith, has more then protected himself, when he title his motion that way.

Courts must read pro-se allegations in a liberal fashion and hold those pro-se pleadings "to less stringent standards than formal pleadings drafted by lawyers. "Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L. Ed. 2d 652 (1972). Pursuant to 28 U.S.C. 1915A(b), the Court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the Court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. A complaint is frivolous if it is without arguable merit either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989).

Mr. Smith, believes that he has stated a claim, which relief can be granted. It's nothing frivolous, or, malicious, about an actual and active "conflict of interest", with that being said, there is no justified reason for this court dismiss Mr. Smith. The United States Attorney's Office, didn't even argue in their response, that Mr. Smith didn't state a claim, or that his motion was frivolous or malicious. The reason why that office, didn't is because they know that it isn't. So if the Court, reads the motion Mr. Smith, filed in the proper-person, in a liberal fashion and hold Mr. Smith's pleadings "to less stringent standards than formal pleadings drafted by lawyers", then this matter and motion is ripe for this Court to rule on the merits of the "conflict of interest" issue.

This Circuit has held, still holds and reaffirm that the Smith case articulates this circuit's test for proving "an actual conflict of interest" in the representation context. 815 F.2d at 1405-06. The Fourth Circuit Court of Appeal's has interpret Smith to mean the following: An "actual conflict of interest occurs when a lawyer has "inconsistent".

(12)

Smith, 815 F.2d at 1405. In order to prove an actual conflict hindered petitioner's lawyer's performance, petitioner "must make a factual showing of inconsistent interest" or point to, "specific instances in the record" to suggest an actual impairment of his or her interest. See Smith, 815 F.2d at 1404; Oliver v. Wainwright, 782 F.2d 1521, 1524-25 (11th Cir)

In the present case, Mr. Smith, has shown from the record that there was an simultaneous representation in both his and Agent Hersl case Mr. Smith, has shown that Mr. Purpura, earlier representation of Agent Hersl's, was related to counsel's later representation of Mr. Smith, and Mr. Purpura, actually learned of particular confidential information during the prior representation of Agent Hersl, that was very relevant to Mr. Smith's later case. The rule of law in this circuit is and will continue to be that "ONCE THE FORMER CLIENT PROVES THAT THE Subject matter of the present and prior representation are substantially related, the Court will irrebutably presume that relevant confidential information was disclosed during the former period of representation. See- Duncan v. Merrill Lynch, Pierce, Fenner & Smith, Inc. 646 F.2d 1020, 1028 (5th Cir. 1981), cert. denied; 454 U.S. 895, 102 S.Ct. 394, 70 L.Ed. 2d 211 (1981). The rational for this rule applies to both pretrial proceedings motions to disqualify lawyers as well as post-conviction proceedings concerning Sixth Amendment violations. E.g. Duncan, 646 F.2d 1020 at 1033.

The reason for this presumption is that it is not practical or fair to require a subsequent client like Mr. Smith, to prove what specific facts the former client Agent Hersl, disclosed to the lawyer during the prior representation. Moreover, standard of professionalism often prevent the lawyer from disclosing such information without the former client's consent. To avoid these complications upon a showing of substantial relatedness, it is presume that the former client Agent Hersl, divulged to Mr. Purpura, all of his confidences relevant to the subject of representation.

An conflict of interest, that was not raised before the trial court, the defendant must demonstrate that 1)- counsel operated under "an actual conflict of interest" and 2)- this conflict "adversely affected his lawyer's performance." United States v. Dehlinger, 740 F.3d 315, 322 (4th Cir. 2014) (quoting Cuyler v. Sullivan, 466 U.S. 335, 348, 100 S.Ct. 1708, 64 L. Ed 2d 333 (1980). If the defendant

satisfies this showing, prejudice is presumed, and the defendant need not demonstrate a reasonable probality that, but for counsel's conflicted representation, the outcome of the proceeding would have been different. United States v. Nicholson, 611 F.3d 191, 205 (4th Cir. 2010)..

Mr. Smith, has demonstrated an actual conflict when he showed that his counsel "actively represented conflicting interest". Sullivan 446 U.S. at 350. Mr. Smith has established an adverse effect if he rather when he proves that his attorney took action on behalf of one client that was adverse to the defense of another, or, failed to take action on one because it would adversely affect another. See- Micken v. Taylor, 240 F.3d 348, 360 (4th Cir. 2001); see- Jones v. Polk, 401 F.3d 257, 267 (4th Cir. 2005). When Agent Hersl, implicated Agent Craig Jester and other member of the "GTTF" corruption, and, Mr. Purpura, did not reveal or disclose that to Mr. Smith, then Mr. Smith has establish the adverse effect that his attorney, Mr. Purpura took on Agent Hersl, and, not Smith himself A clear "conflict of interest". Further-more, because an actual "conflict of interest" requires not a theoretically divided loyalty, but also a conflict that actually affected counsel's performance, the actual conflict and adverse effect inquires frequently are interwined. Jones, 401 F. 3d at 267.

In United States v. Tatum, 943 F.2d 370, 376 (4th Cir. 1991) ("When the attorney is actively engaged in the legal representation which requires him to account to two masters, an actual conflict exist when it can be shown that he took action on behalf of one.); Hoffman v. Leeke, 903 F.2d 280, 286 (4th Cir. 1990). The Fourth Circuit Court of Appeal's, has held in Woodfolk v. Maynard, 857 F.3d 531, U.S. App. LEXIS 8965 (2017); Have found no time bar or adequate state procedural bar to preclude Mr. Woolfolk's claim on the conflict of issue. The same should hold true for Mr. Smith in the present case.

This Court has the power to correctly recharacterized a Rule 60 (b) motion if the court finds its not applicable to the criminal judgment Mr. Smith believe that his Rule 60(b) is the applicable vehicle to hear this conflict of interest issue on the merit, due to the fraud that was committed upon the Court, by the concealment of the "conflict of interest This Court could recharacterize the motion as many different motions or vehicles, such as Fed. R. Civ. P. 12(b)(1); Rule 37; A 2241 petition, which would require records to be transfer to a Sister Circuit, where Mr.

Smith is incarcerated. Witnesses would have to travel there to give their sworn testimony, which would be costly and inconvenient, judicial economy should be consider, there is a 28 U.S.C. 1655, that grants this Court the power to entertain this motion pursuant to Rule 60(b) or the many other vehicles to rule on the merit of the issue raised, by Mr. Smith. Other cases that may assist the Court in making its decision are as follow: United States v. Belton, 2020 U.S. District LEXIS 6681 (2022); Woodfolf v. Maynard, 857 F.3d 531 (2017), United States v. Letitia Magini, 973 F.2d 261 (1992); Hooper v. Barnett, 1992 U.S. App. LEXIS 17459 (1992); United States v. Gilliam, 975 F.2d 1050 (1992), the Fourth Circuit Court of Appeal's concluded that the district court erred in failing to conduct a Federal Rule of Criminal Proceeding 44(c) hearing. ; United States v. Hart v. Davenport, 478 F.2d 203 (1973); the district court denial of appellant's petition challenging his conviction was REVERSED with instrution to release appellant unless a new trial was soon granted.; United States v. Swartz, 975 F.2d 1042 (1992), was denied Sixth Amendment Right to effective representation by representing both her and her co-defendant resulting in an actual conflict of interest. The Fourth Circuit Court of Appeal's REVERSED and VACATED. United States v. Tatum, 943 F.2d 370 (1991

The law demands that Mr. Smith's case be REVERSED & REMANDED to the district court for a NEW TRIAL or a Evidentiary Hearing, due to the active and actual conflict of interest with Mr. Purpura's representation of Mr. Smith, due to his representation of Agent Hersl, at the same time he was representing Mr. Smith, in the above listed case. The Sixth Amendment of the United States Constitution, as well as fundamental fairness demands it.

Respectfully Submitted

Patrick Smith

----------------------------------

Patrick Smith #63919-037
Federal Prison Camp
FCI - Talladega
PMB 2000
Pro-Se                          Talladega, Alabama 35160

(15)

CERTIFICATE OF SERVICE
-----------------------

I HEREBY CERTIFY, that on the 17th day of November 2022, the exact same copy was send to Ms. Christine Goo, Mr. Brandon Moore, and Mr. Erek L. Barron, at the United States Attorney's Office, located at 36 South Charles Street, Suite #400, Baltimore, Maryland 21201; by First Class United States Mail & Postage.

Respectfully Submitted

*Patrick Smith*

Patrick Smith #63919-037
Federal Prison Camp
FCI - Talladega
PMB 2000
Talladega, Alabama 35160

Pro-Se