IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA

v.                                                  Criminal No. ELH-18-017

PATRICK SMITH,
*Defendant*.

**MEMORANDUM OPINION**

Defendant Patrick Smith, one of nineteen defendants in the underlying criminal case, entered a plea of guilty in May 2019 to the charge of conspiracy to distribute and possess with intent to distribute one kilogram or more of heroin. ECF 562. The plea was tendered pursuant to a Plea Agreement. ECF 563. Under Fed. R. Civ. P. 11(c)(1)(C) ("C Plea"), the parties agreed to a sentence of 120 months of imprisonment. *Id.* ¶¶ 9, 10. That sentence corresponded to the congressionally mandated minimum sentence. *Id.* ¶ 3. At sentencing on August 21, 2019 (ECF 643), the Court accepted the C Plea and sentenced Smith to a term of 120 months of imprisonment, dating from April 5, 2018. ECF 645; *see also* ECF 821.

Smith has submitted multiple filings seeking compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i): ECF 1125; ECF 1240; ECF 1249 (collectively, the "Motion" or "Motion for Compassionate Release"). The Motion is supported by several exhibits. The government opposes the Motion. ECF 736; ECF 897; ECF 985; ECF 1163.

No hearing is necessary to resolve the Motion. Local Rule 105.6. For the reasons that follow, I shall deny the Motion.

## I.    Factual and Procedural Background[1]

To avoid a needlessly lengthy opinion, I shall assume the parties' familiarity with the factual and procedural background of this case, as set forth in the Court's earlier opinions, which are incorporated here. *See* ECF 911; ECF 1013; ECF 1046; ECF 1105.

Petitioner was indicted on January 11, 2018, along with seventeen others. ECF 1. A Superseding Indictment was filed on March 22, 2018, which added another defendant. *See* ECF 157. The Superseding Indictment charged Smith, the lead defendant, with multiple offenses: conspiracy to distribute and possess with intent to distribute one kilogram or more of heroin, in violation of 21 U.S.C. § 846 (Count One); possession of firearms by a prohibited person, in violation of 18 U.S.C. § 922(g)(1) (Count Eight); possession with intent to distribute heroin, in violation of 21 U.S.C. § 841(a)(1) (Count Nine); and possession of two firearms in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count Ten).

In May 2019, Smith entered a plea of guilty to Count One, charging conspiracy to distribute and possess with intent to distribute one kilogram or more of heroin. ECF 562. Pursuant to Smith's Plea Agreement (ECF 563), tendered under Fed. R. Civ. P. 11(c)(1)(C), the parties stipulated to a sentence of 120 months of incarceration as the appropriate disposition. *Id.* ¶¶ 9, 10. As indicated, the sentence corresponded to the congressionally mandated minimum term of imprisonment. *Id.* ¶ 3.[2]

The Plea Agreement included a stipulation of facts. ECF 563 at 10–11. The stipulation indicates that from March 2017 to January 2018, defendant conspired with others "to obtain

---

[1] As the docket reflects, defendant has inundated the Court with a barrage of filings. He has also called Chambers on multiple occasions, asking about the status of his case.

[2] By pleading guilty, defendant avoided a possible mandatory, consecutive sentence for the offense under 18 U.S.C. § 924(c).

wholesale quantities of heroin and distribute one kilogram or more of that heroin at the street-level." *Id*. at 10.  Smith "supplied two different heroin shops" in Baltimore, each of which was led by a coconspirator, whom the stipulation refers to as "Co-Conspirator 1" and "Co-Conspirator 2." *Id*.  Through a wiretap investigation and the use of pole cameras, law enforcement gathered evidence of "the large scale heroin distribution that occurred in both shops." *Id*.

A search warrant was executed at defendant's home on October 26, 2017.  *Id.*  Two firearms were recovered, along with approximately 2,800 grams of heroin.  *Id.*

The Presentence Report (ECF 640), as amended (ECF 647), reflects that defendant was 56 years of age at sentencing.  ECF 647 at 3.  After three deductions for acceptance of responsibility under § 3E1.1 of the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines"), defendant had a final offense level of 29.  *Id.* ¶ 24.

Defendant had numerous prior convictions, but many did not score points.  *See id.* ¶¶ 30–33, 36.  Two convictions scored a total of six points.  *See id.* ¶¶ 29, 35.  Two more points were added under U.S.S.G. § 4A1.1(d), because defendant was on parole at the time of the instant offense.  *Id.* ¶ 38.  Therefore, he had a total of eight criminal history points, resulting in a criminal history category of IV.  *Id.* ¶ 39.[3]

With a final offense level of 29 and a criminal history category of IV, Smith's advisory sentencing Guidelines called for a sentence ranging from 121 to 151 months of imprisonment.  ECF 647, ¶ 85.  As mentioned, the C Plea called for a sentence of 120 months.

Sentencing was held on August 21, 2019.  ECF 643.  The Court imposed the agreed-upon sentence of 120 months, with credit dating from April 5, 2018.  ECF 645; *see also* ECF 821.

---

[3] Under amendments to the Guidelines that went into effect in November 2023, defendant, if sentenced today, would have seven criminal history points.  *See* U.S.S.G. § 4A1.1(e).  But, even with seven points, defendant would remain a criminal history category of IV.

On July 21, 2020, less than one year after defendant was sentenced, he filed his first motion for compassionate release.  ECF 723.  A reply is docketed at ECF 790 and ECF 820,[4] and a supplement is docketed at ECF 893.  Defendant filed a second compassionate release motion on February 10, 2021. ECF 917.  And, a supplement or amendment appears at ECF 965.  By Memorandum and Order of March 1, 2021 (ECF 911, ECF 912), I denied the first compassionate release motion (ECF 723, ECF 893).  And, by Memorandum Opinion and Order of December 23, 2021 (ECF 1013, ECF 1014), I denied the second compassionate release motion (ECF 917, ECF 965).

On September 11, 2020, while defendant's first compassionate release motion was pending, Smith filed a post-conviction petition under 28 U.S.C. § 2255.  ECF 756, ECF 756-1.  He asserted several grounds of ineffective assistance of counsel.[5]  Ground Four alleged that defense counsel was ineffective for failing to file a direct appeal.  ECF 756-1 at 29.[6]  The government's response is docketed at ECF 809.  Smith replied.  ECF 843.

By Order of November 23, 2020 (ECF 819), I granted the motion to vacate, in part, so as to enable Mr. Smith to lodge an appeal.  To that end, I issued an amended judgment to allow a belated appeal.  ECF 821.  However, based on defendant's motion, the appeal (ECF 830) was subsequently dismissed.  *See* ECF 870; ECF 871.

---

[4] The docket incorrectly reflects that ECF 820 pertains to the post-conviction motion.

[5] As ECF 756-1 reflects, the memorandum is quite sophisticated in its legal arguments.

[6] In the Plea Agreement, defendant waived many rights to appeal.  ECF 563, ¶ 11.  But, defendant circumvented that barrier by asserting that his plea was involuntary, because he was having an adverse reaction to his medication, but counsel failed to inform the court.  ECF 756-1 at 29.

Smith sought to amend or supplement his post-conviction petition.  *See* ECF 847; ECF 891 (collectively with ECF 756, the "Petition").  He also filed several other motions.  *See* ECF 917; ECF 918; ECF 919; ECF 920; ECF 978; ECF 1003; ECF 1008; ECF 1020; ECF 1022.

In an 84-page Memorandum Opinion and Order of April 29, 2022 (ECF 1046, ECF 1047), the Court denied defendant's recusal motion (ECF 933); denied the motion to subpoena certain witnesses for an evidentiary hearing (ECF 930); denied the motion for oral argument (ECF 931); denied the motion for an evidentiary hearing (ECF 932); granted various motions to amend (ECF 919, ECF 978, ECF 1003, ECF 1008, ECF 1020, ECF 1022); and denied post-conviction relief (ECF 756, ECF 847, ECF 891).

Smith moved for reconsideration.  ECF 1103.  I considered that motion under Fed. R. Civ. P. 60(b).  ECF 1105 at 3.  By Memorandum and Order of August 11, 2022 (ECF 1105, ECF 1106), I denied defendant's motion for reconsideration.

Smith appealed to the Fourth Circuit as to various rulings.  ECF 1181.  In a per curiam opinion of May 14, 2024, the Fourth Circuit denied a certificate of appealability as to the Petition and dismissed the appeal.  ECF 1238, ECF 1238-2.  But, as to defendant's motion for reconsideration, and motions to amend, the Fourth Circuit ruled that they constituted unauthorized, successive § 2255 petitions, which the district court should not have considered.  *Id.*  It vacated the denial of the motion for reconsideration and remanded with instructions to dismiss the motion.  *Id.* The Mandate issued on July 8, 2024.  ECF 1250.

On October 21, 2022, Smith filed his third motion for compassionate release, pursuant to 18 U.S.C. § 3582(c)(1)(A).  ECF 1125.  He also submitted several exhibits.  The government opposed the motion (ECF 1163) and submitted exhibits.  Then, on January 30, 2023, the Bureau of Prisons ("BOP") released Smith to home confinement, pursuant to the Coronavirus Aid, Relief,

and Economic Security Act ("CARES Act").  *See* 18 U.S.C. § 3624(c)(2); ECF 1240 at 6.  Because defendant had been released to home confinement, by Order of April 21, 2023 (ECF 1180), I denied his third compassionate release motion, as moot.

Defendant noted an appeal to the Fourth Circuit.  ECF 1181.  On April 12, 2024, the Fourth Circuit determined that the motion was not moot.  *United States v. Smith*, 2024 WL 1596672, at *2 (4th Cir. Apr. 12, 2024) (per curiam); ECF 1229-1. It stated, *id.* at *2:  "Even though Smith was transferred to home confinement, he is still serving his sentence and remains in the custody of the Bureau of Prisons."  Further, the Court said, *id.*:  "Pursuant to § 3582(c)(1)(A), the district court has discretion to reduce Smith's sentence—even to time served—and to order Smith's immediate release." *Id*.  Moreover, the Court explained that the motion was not moot, because it remains "possible for the district court to grant Smith effectual relief under § 3582(c)(1)(A)(i) by reducing his prison sentence or releasing him from the custody of the [BOP] . . . ."  *Id*. Accordingly, the Court remanded for further proceedings.  *Id.*  The mandate issued on May 6, 2024.  ECF 1233.

On May 30, 2024, Smith filed a supplement to his compassionate release motion.  ECF 1240.  Another supplement was docketed on June 21, 2024.  ECF 1249.  I shall refer to ECF 1125, ECF 1240, and ECF 1249 collectively as the "Motion."  Responses of the government to defendant's various compassionate release submissions are docketed at ECF 736; ECF 897; ECF 985; and ECF 1163, along with exhibits.

On July 9, 2024, defendant filed a "Motion for Default Due to the Government's Failure to Response [sic] to the Supplement for Compassionate Release that Mr. Smith Filed on May 30, 2024 . . . ." ECF 1251 ("Motion for Default").  Then, on July 15, 2024, the Office of the Federal

Public Defender ("FPD") advised the Court that it does not intend to supplement the Motion.  ECF 1252.  Nor does the FPD seek appointment of counsel for Mr. Smith.

By Order of July 16, 2024 (ECF 1255), the Court denied the Motion for Default.  The Court also set a deadline for the government to respond to the Motion, *if* it wanted to do so.  No response was filed.

When Smith filed his compassionate release motion in October 2022 (ECF 1125), he was incarcerated at FCI-Talladega in Talladega, Alabama.  He requested relief based on his "medical issues and age, and his unique susceptibility to contracting [COVID-19] in a crowded facility, where [his] abilities to take protective measures such as isolating himself and regularly sanitizing his hands [was] severely limited."  *Id*. at 1.  Smith also based his Petition on family hardship, asserting that the two children adopted by his late fiancée would be placed into foster care if he were not released.  *Id*. at 11.

Smith's supplement of May 30, 2024 (ECF 1240) set forth several grounds to support his request for compassionate release: 1) medical conditions that he claims place him at high risk if he contracts COVID-19; 2) programs and courses he has completed while incarcerated; 3) family hardship; 4) denial of Social Security Income ("SSI") benefits while incarcerated; and 5) factors he asserts make him no longer a risk to the public.  ECF 1240 at 4–10.

In particular, Smith was born in July 1963.  ECF 647 (Presentence Report) at 3.  He is now 61 years old.  He claims to have asthma, diabetes, coronary artery disease, hypertension, chronic obstructive pulmonary disease, and obesity.  ECF 1240 at 4.  Smith has also provided a letter from his doctor, Emily M. Carper, M.D., explaining that Smith, a patient in her care for more than a year, has "Type 2 Diabetes Mellitus with Chronic Kidney Disease, Chronic Kidney Disease Stage IV, Anemia of Chronic disease, Coronary artery disease . . . ."  ECF 1240-1 at 2.  Several health

conditions, including diabetes, kidney disease, and neuropathy, are reflected in the Presentence Report ("PSR").  *See* ECF 647, ¶¶ 61–64.

Smith also points to his rehabilitation efforts.  ECF 1240 at 6–7.  According to Smith, since his release to home confinement on January 30, 2023, he has had no infractions.  *See id.*  He has also completed classes and programs, including a commercial driver's license Class-B training course.  ECF 1240-2.

In addition, Smith asserts that he has a son who is terminally ill, living in the metropolitan area of Atlanta, Georgia, and Smith has not seen him since his release to home confinement.  *See* 1240 at 7.  Smith seeks to care for him.  In addition, he seeks to provide care for the two adopted children of his late fiancée.  *Id.*

Smith has a projected release date of October 12, 2025.  *See Bureau of Prisons Inmate Locator*, https://www.bop.gov/inmateloc/ (search by BOP Register Number 63919-037) (last accessed August 22, 2024).

## II.    Legal Standard

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see United States v. Moody*, ___ F.4th ___, 2024 WL 3881520, at *3 (4th Cir. Aug. 21, 2024); *United States v. Davis*, 99 F.4th 647, 653 (4th Cir. Apr. 18, 2024); *United States v. Brown*, 78 F.4th 122, 128 (4th Cir. 2023); *United States v. Malone*, 57 F.4th 167, 173 (4th Cir. 2023); *United States v. Bond*, 56 F. 4th 381, 383 (4th Cir. 2023); *United States v. Bethea*, 54 F.4th 826, 831 (4th Cir. 2022); *United States v. Ferguson*, 55 F.4th 262, 267 (4th Cir. 2022); *United States v. Hargrove*, 30 F.4th 189, 194 (4th Cir. 2022); *United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020), *abrogated on other grounds by United States v. Troy*, 64 F.4th 177 (4th Cir. 2023); *United States v. Jackson*, 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916

F.3d 389, 395 (4th Cir. 2019).  But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011).  One such exception is when the modification is "expressly permitted by statute."  *See* 18 U.S.C. § 3582(c)(1)(B); *see also Jackson*, 952 F.3d at 495.

A statutory exception is codified at 18 U.S.C. § 3582, "commonly known as the 'compassionate release exception.'"  *Moody*, 2024 WL 3881520, at *3; *see Hargrove*, 30 F.4th at 194; *see also United States v. Osman*, 2024 WL 3633573, at *3 (4th Cir. Aug. 2, 2024) (stating that a motion under § 3582(c)(1)(A) is "commonly referred to as a motion for compassionate release . . . .").  The provision was first enacted as part of the Sentencing Reform Act of 1984.  *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984).  Under 18 U.S.C. § 3582(c)(1)(A)(i), a court may modify a defendant's sentence if "extraordinary and compelling reasons warrant such a reduction."  *Hargrove*, 30 F.4th at 194.

As originally enacted, the compassionate release provision permitted a court to alter a sentence only upon motion by the Director of the Bureau of Prisons ("BOP").  *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984).  This meant that a defendant seeking compassionate release had to rely on the BOP Director for relief.  *See Bethea*, 54 F.4th at 831; *see, e.g.*, *Orlansky v. FCI Miami Warden*, 754 F. App'x 862, 866–67 (11th Cir. 2018); *Jarvis v. Stansberry*, No. 2:08CV230, 2008 WL 5337908, at *1 (E.D. Va. Dec. 18, 2008) (denying compassionate release motion because § 3582 "vests absolute discretion" in the BOP).

For many years, the BOP rarely filed such a motion on an inmate's behalf.  As a result, compassionate release was an infrequent occurrence.  *See Hr'g on Compassionate Release and the Conditions of Supervision Before the U.S. Sentencing Comm'n* 66 (2016) (statement of Michael E. Horowitz, Inspector General, Dep't of Justice) (observing that, on average, only 24 inmates were

granted compassionate release per year between 1984 and 2013).

However, with the passage of the First Step Act ("FSA") in 2018, *see* Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018) (codified as 18 U.S.C. § 3582(c)(1)(A)), Congress "broadened" the authority of courts to grant sentencing modifications pursuant to 18 U.S.C. § 3582, *Malone*, 57 F.4th at 173, by enabling a federal inmate to file a motion for compassionate release directly with the court, as long as the inmate first exhausted administrative remedies.  *See United States v. McCoy*, 981 F.3d 271, 275–76 (4th Cir. 2020).  In particular, the FSA authorizes a court to grant compassionate release "upon motion of the Director of [BOP], *or upon motion of the defendant after the defendant has fully exhausted all administrative rights* to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," whichever occurs first. 18 U.S.C. § 3582(c)(1)(A) (emphasis added); *see also Ferguson*, 55 F.4th at 268; *United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021); *McCoy*, 981 F.3d at 276.

Under 18 U.S.C. § 3582(c)(1)(A), the court may modify the defendant's sentence only if two criteria are satisfied.  *Brown*, 78 F.4th at 128; *Bethea*, 54 F.4th at 831.  Specifically, "the district court must conduct a two-step analysis."  *United States v. Centeno-Morales*, 90 F.4th 274, 279 (4th Cir. 2024); *see also Bond*, 56 F.4th at 383.

The first step actually consists of two parts.  The court "must determine: 1) whether extraordinary and compelling reasons warrant . . . a [sentence] reduction; and 2) that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Malone*, 57 F.4th at 173; *see Moody*, 2024 WL 3881520, at * 4; *Davis*, 99 F.4th at 653; *Bond*, 56 F.4th at 383; *Bethea*, 54 F.4th at 831; *United States v. Kibble*, 992 F.3d 326, 330 (4th Cir. 2021) (per curiam), *cert. denied*, ___ U.S. ___, 142 S. Ct. 383 (2021).

If that first step is met, the court then proceeds to the second step.  Under the second step, the court must determine whether release is appropriate in light of the sentencing factors in 18 U.S.C. § 3553(a), "to the extent those factors are applicable."  *Bethea*, 54 F.4th at 831; *see Moody*, 2024 WL 3881520, at *4; *Malone*, 57 F.4th at 174; *Hargrove*, 30 F.4th at 194; *United States v. High*, 997 F.3d 181, 186 (4th Cir. 2021); *Kibble*, 992 F.3d at 330.  "Importantly, a court assessing a compassionate release motion is entitled to consider the § 3553(a) factors '[o]nly after' conducting the first step's analysis."  *Osman*, 2024 WL 3633573, at *4 (citations omitted) (alteration in *Osman*).

As the Fourth Circuit has recognized, "when deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court may grant a reduction only if it is 'consistent with applicable policy statements issued by the Sentencing Commission.'"  *United States v. Taylor*, 820 F. App'x 229, 230 (4th Cir. 2020) (per curiam) (citing 18 U.S.C. § 3582(c)(1)(A)); *see Davis*, 99 F.4th at 653–54; *see also Malone*, 57 F.4th at 173 (stating that the district court may consider the § 3553(a) sentencing factors only after determining that extraordinary and compelling reasons warrant a sentence reduction and that a reduction is consistent with the Sentencing Commission's policy statements); 28 U.S.C. § 994(t).

Generally, "the district court enjoys broad discretion in conducting a § 3582(c)(1)(A) analysis."  *United States v. Jenkins*, 22 F.4th 162, 169 (4th Cir. 2021).  Notably, "it weighs against an abuse of discretion—and is viewed as 'significant'—when the same judge who sentenced the defendant rules on the compassionate release motion."  *Bethea*, 54 F.4th at 834; *see United States v. Gutierrez*, 2023 WL 245001, at *5 (4th Cir. Jan. 18, 2023); *Hargrove*, 30 F.4th at 200; *High*, 997 F.3d at 189.

The Policy Statement codified at U.S.S.G. § 1B1.13 is titled "Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A)" ("Policy Statement").   "[U]ntil recently," that Policy Statement did not apply to motions filed by prisoners.  *Davis*, 99 F.4th at 654; *see McCoy*, 781 F.3d at 281.  The Policy Statement began: "Upon motion *of the Director of the Bureau of Prisons* under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . ." U.S.S.G. § 1B1.13 (2021) (emphasis added).  Interpreting this language, the Fourth Circuit said in *McCoy*, 981 F.3d at 281, that, "[b]y its plain terms . . . § 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A)."  Therefore, on the basis of that earlier text, the Court held:  "When a defendant exercises his . . . right to move for compassionate release on his own behalf, . . . § 1B1.13 does not apply, and thus § 3582(c)(1)(A)'s consistency requirement does not constrain the discretion of district courts."  As a result, district courts were "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise.'"  *Id.* at 284 (citation omitted).

However, effective November 1, 2023, U.S.S.G. § 1B1.13 was amended.  *See Davis*, 99 F.4th at 654 (citing 88 Fed. Reg. 28254 (May 3, 2023)).  The Policy Statement now begins: "Upon motion of the Director of the Bureau of Prisons *or the defendant* pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . ."  U.S.S.G. § 1B1.13 (2023) (emphasis added).  Therefore, the Policy Statement is now applicable to defendant-filed motions under § 3582(c)(1)(A).  *Davis*, 99 F.4th at 658 (directing district court on remand "to revisit [the petitioner's] arguments in light of the Sentencing Commission's new policy statement outlining when and how to consider changes in law as an extraordinary and compelling reason for a reduction").  As a result, when a defendant files a motion for compassionate release, a court must

ensure that any sentence reduction "is consistent with" the Policy Statement's provisions. 18 U.S.C. § 3582(c)(1)(A).

The Policy Statement provides, in part, U.S.S.G. § 1B1.13(a):

(B) IN GENERAL.—Upon motion of the Director of the Bureau of Prisons or the defendant pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—

(1) (A) extraordinary and compelling reasons warrant the reduction; or

(B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;

(2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

(3) the reduction is consistent with this policy statement.

Section 1B1.13(b) of the Policy Statement is titled "EXTRAORDINARY AND COMPELLING REASONS." It identifies multiple circumstances that, individually or in combination, may provide "extraordinary and compelling reasons" for a reduction in sentence. *See* § 1B1.13(b)(1)–(6). These include certain medical circumstances of the defendant, such as a terminal illness, "serious cognitive impairment," a medical condition that requires "specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death"; or the defendant is at imminent risk of being affected by "an ongoing outbreak of infectious disease" or "an ongoing public health emergency . . . .", § 1B1.13(b)(1)(A), (B), (C), (D); the defendant's age, along with other factors, § 1B1.13(b)(2); the defendant's family circumstances, § 1B1.13(b)(3)(A), (B), (C), (D); the fact that the defendant, while in custody, was the victim of sexual or physical abuse committed by, or at the direction, of a correctional officer,

13

§ 1B1.13(b)(4)(A), (B); for a defendant who received an "unusually long sentence" and has served at least 10 years of the sentence, a non-retroactive change in the law that "produce[s] a gross disparity" in relation to "the sentence likely to be imposed at the time the motion is filed . . . .", § 1B1.13(b)(6); and "any other circumstance or combination of circumstances . . . similar in gravity to" the circumstances "described in paragraphs (1) through (4)." § 1B1.13(b)(5).

Section 1B1.13(c) of the Policy Statement is titled "LIMITATION ON CHANGES IN LAW." It specifies that, "[e]xcept as provided in subsection (b)(6)," which concerns an "unusually long sentence," "a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement." U.S.S.G. § 1B1.13(c). "However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under [the Policy Statement], a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction." *Id.*; *see Davis*, 99 F.4th at 654.[7]

Section 1B1.13(d) of the Policy Statement concerns rehabilitation of the defendant. It limits the weight a court may assign to a defendant's rehabilitation while serving a sentence. The Section provides that, "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by

---

[7] In *Concepcion v. United States*, 597 U.S. 481 (2022), the Supreme Court concluded that a district court's general obligation "to consider [all] nonfrivolous arguments presented by the parties," *id.* at 487, required it "to consider intervening changes of law or fact in exercising [its] discretion to reduce a sentence pursuant to the First Step Act." *Id.* at 500. However, the Court acknowledged that "Congress or the Constitution [may] limit[] the scope of information that a district court may consider in deciding whether, and to what extent, to modify a sentence . . . ." *Id.* at 486. "Thus," the Court noted, "Congress expressly cabined district courts' discretion [to reduce a sentence] by requiring courts to abide by the Sentencing Commission's policy statements." *Id.* at 495. It follows that, because the Policy Statement is now applicable to prisoner-filed motions for compassionate release, a court may consider intervening changes of law only in the manner that the Policy Statement prescribes.

itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13(d). However, "rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." *Id.* And, § 1B1.13(e) provides that "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant" a sentence reduction.

Even if a defendant establishes that extraordinary and compelling reasons warrant relief, the court must also consider the sentencing factors under 18 U.S.C. § 3553(a) to determine whether, in its discretion, a reduction of sentence is appropriate. *See Dillon v. United States*, 560 U.S. 817, 826–27 (2010); *Brown*, 78 F.4th at 128; *Mangarella*, 57 F.4th at 200, 203; *Malone*, 57 F.4th at 174; *Bethea*, 54 F.4th at 833; *Hargrove*, 30 F.4th at 195; *High*, 997 F.3d at 186; *Martin*, 916 F.3d at 397; *see also Kibble*, 992 F.3d at 329–30 (noting that district court must consider § 3553(a) factors when considering a motion to reduce sentence under § 3582(c)(1)(A) and district court enjoys broad discretion in conducting this analysis); *United States v. Jones*, 2022 WL 2303960, at *1 (4th Cir. June 27, 2022) (per curiam) (noting that "a court need not explicitly make findings on extraordinary and compelling reasons where consideration of the § 3553(a) factors counsels against release"); *United States v. Butts*, 2021 WL 3929349, at *2 (4th Cir. Sept. 2, 2021) (per curiam) (noting that, even if the district court finds extraordinary and compelling circumstances, it must consider the § 3553(a) factors, to the extent applicable, in exercising its discretion); *United States v. Trotman*, 829 F. App'x 607, 608 (4th Cir. 2020) (per curiam) (recognizing that, when considering a motion to reduce sentence under § 3582(c)(1)(A), the court must consider the sentencing factors under § 3553(a), to the extent applicable); *United States v. Chambliss*, 948 F.3d 691, 693–94 (5th Cir. 2020) (district court must give due consideration to the

§ 3553(a) factors).  Notably, the amendments to the Guidelines in November 2023 did not alter this requirement.

The § 3553(a) "factors include 'the nature and circumstances of the offense'; 'the history and characteristics of the defendant'; and the need for the sentence to 'provide just punishment,' 'afford adequate deterrence,' 'protect the public from further crimes of the defendant,' and 'provide the defendant with . . . training, medical care, or other correctional treatment.'" *Jenkins*, 22 F.4th at 170 (quoting 18 U.S.C. § 3553(a)).  As the Fourth Circuit has observed, "'many case-specific facts fit under the broad umbrella of the Section 3553(a) factors.'" *Bond*, 56 F.4th at 384 (quoting *Jackson*, 952 at 500).  The district courts "enjoy the discretion to give additional weight to any one factor so long as they do not confine their analysis to that factor." *Davis*, 99 F.4th at 656; *see United States v. Friend*, 2 F.4th 369, 381–82 (4th Cir. 2021).  And, in weighing the § 3553(a) factors, the court may consider the terms of a plea bargain. *Bond*, 56 F.4th at 384–85.

In *Davis*, 99 F.4th at 659, the Fourth Circuit said:  "District courts are not required to acknowledge and address each of the defendant's arguments on the record when conducting a § 3553(a) analysis."  But, "'the record as a whole'" must demonstrate that the judge considered the parties' contentions and had "'a reasoned basis'" for the exercise of judicial discretion. *Malone*, 57 F.4th at 176 (citations omitted); *see also Davis*, 99 F.4th at 659; *United States v. Puzey*, 2023 WL 2985127, at *2 (4th Cir. Apr. 18, 2023) (per curiam).  In particular, "the court must provide an explanation sufficient 'to allow for meaningful appellate review' in light of the particular circumstances of the case." *United States v. Cohen*, 2022 WL 2314300, at *1 (4th Cir. June 28, 2022) (per curiam) (quoting *High*, 997 F.3d at 190).  And, a district court abuses its discretion when it "act[s] arbitrarily or irrationally," "fail[s] to consider judicially recognized factors constraining its exercise of discretion," "relie[s] on erroneous factual or legal premises,"

16

or "commit[s] an error of law." *High*, 997 F.3d at 187 (internal quotation marks omitted); *see Jenkins*, 22 F.4th at 167; *see also Brown*, 78 F.4th at 132 (criticizing district judge's "cursory" consideration of the § 3553(a) factors); *United States v. Dillard*, 891 F.3d 151, 158 (4th Cir. 2018).

"How much explanation is 'enough' depends on the complexity of a given case." *Gutierrez*, 2023 WL 245001, at *3; *see United States v. McDonald*, 986 F.3d 402, 412 (4th Cir. 2021).  For example, "when a defendant 'present[s] a significant amount of post-sentencing mitigation evidence, . . . a more robust and detailed explanation [is] required.'" *United States v. Cohen*, 2022 WL 2314300, at *1 (4th Cir. June 28, 2022) (per curiam) (quoting *High*, 997 F.3d at 190) (alterations in *Cohen*).  In any event, "the court must provide an explanation sufficient 'to allow for meaningful appellate review' in light of the particular circumstances of the case." *Cohen*, 2022 WL 2314300, at *1 (quoting *High*, 997 F.3d at 190).  And, a more detailed explanation may be required if a substantial change in the law creates a disparity between the sentence a defendant actually received and the sentence he would receive, if sentenced under current law.  *See Davis*, 99 F.4th at 661; *see* 18 U.S.C. § 3553(a)(6) (directing a court to consider "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct.").  In explaining its compassionate release ruling, "a district court is permitted to add to its original, sentencing-phase consideration of the § 3553(a) factors . . . . " *Bethea*, 54 F.4th at 834; *see Kibble*, 992 F.3d at 332.

*Davis*, 99 F.4th 647, is illustrative.  The *Davis* Court recognized that a change in the Guidelines or the law can produce a sentencing disparity under § 3553(a)(6).  *Id.* at 654, 655.  And, the Court observed that changes in the law since the defendant's sentencing "would [have] lower[ed] [the defendant's] guidelines range from a 188–235 months range to [a] 92–115 months range."  *Id.* at 661.  According to the Court, if the defendant were sentenced under current

Guidelines, "it is very likely that [the defendant] would already be out of prison." *Id.*  The Court stated, *id.*: "That reality alone implicates one of the applicable sentencing factors: 'the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.'" *Id.* (quoting 18 U.S.C. § 3553(a)(6)).  The Court concluded that the district court was obligated to provide a "detailed explanation" of its § 3553(a) analysis, because "[t]his sentence disparity is so stark, and the change in law so substantial." *Davis*, 99 F.4th at 661 (*citing Chavez-Meza v. United States*, 585 U.S. 109, 119 (2018)).

### III. Discussion

### A.

Smith was born in 1963 and is now 61 years old.  ECF 647 at 3.  He has multiple health issues, such as asthma, diabetes, coronary artery disease, hypertension, kidney disease, chronic obstructive pulmonary disease, and obesity.  ECF 1240 at 4; *see also* ECF 647, ¶¶ 61–64.  As noted, Smith also provided a letter from his doctor, Emily M. Carper, M.D., explaining that Smith has "Type 2 Diabetes Mellitus with Chronic Kidney Disease, Chronic Kidney Disease Stage IV, Anemia of Chronic disease, Coronary artery disease . . . ."  ECF 1240-1 at 2.

The most recent medical records provided to the Court are dated May 20, 2021.  ECF 1125-2.[8]  These confirm that Smith has diabetes and chronic kidney disease.

On two prior occasions, I determined that, based on defendant's various and serious health conditions, he established an extraordinary and compelling reason for compassionate release.  ECF 911 at 15–16; ECF 1013 at 23.  However, upon consideration of the sentencing factors in 18 U.S.C.

---

[8] ECF 1125-5 contains records from Johns Hopkins Outpatient Center in 2017. And, ECF 1125-6 reflects that in 2004 defendant had disc herniations at L4-L5 and L5-S1, for which he underwent a laminotomy at the University of Maryland Medical System.

§ 3553(a), I also concluded that a sentence reduction was not appropriate.  ECF 911 at 17–18; ECF 1013 at 28.

I see no reason to revisit my determinations in March 2021 and December 2021 that defendant is, indeed, eligible for compassionate release based on his serious medical conditions.

**B.**

The BOP released defendant to home confinement on January 30, 2023, pursuant to the CARES Act.  ECF 1240 at 6.  To the extent that defendant's medical conditions put him at increased risk of complications if he were to contract COVID-19, it would not be due to incarceration, because he is no longer incarcerated.

On this record, defendant's release to home confinement appears to mitigate any concerns regarding the elevated health-related risks due to COVID-19 that flow from institutional confinement.  Notably, Smith does not address how home confinement exacerbates his health risks.  Nor does he explain why his medical conditions warrant releasing him from home confinement.

I have not uncovered many cases in which a court has considered the analysis that applies in the context of a defendant released to home confinement.  The parties do not cite any cases that elucidate the matter.

In *United States v. Donnes*, No. CR 16-12-BLG-SPW, 2021 WL 4290679, at *1 (D. Mont. Sept. 21, 2021), the defendant sought a time-served sentence while he was on home confinement, because of his multiple, serious medical conditions.  In granting the motion, the court cited "the sheer difficulty of maintaining [defendant's] numerous prescriptions and coordinating medical appointments and tests through BOP while also maintaining his in-home medication regimen," as well as Donnes's inability "to obtain timely refills of his prescription medications" due to

administrative issues involving the defendant, his case manager, the insurance company, and the pharmacy. *Id.* Smith has not presented any claims of difficulty in managing his health conditions because of his status on home confinement.

*Malone*, 57 F.4th 167, is particularly instructive. There, the defendant was released to home confinement by the BOP under the CARES Act after serving about 144 months of a 288-month sentence for a firearm and drug conspiracy offense. *Id.* at 169, 170.[9] While on home confinement, the defendant filed a second motion for compassionate release, based, *inter alia*, on his age and serious health ailments. *Id.*

The district court denied the motion. It noted that the defendant had been permitted to live in his own home, had access to medical treatment, and his "'daily needs'" were being met. *Id.* at 172. Nevertheless, the Fourth Circuit concluded that the district court abused its discretion in denying compassionate release, *id.* at 169-70, because it failed "to properly assess the following factors which would warrant Malone's compassionate release: 'his ailing health, advanced age, and relevant 18 U.S.C. § 3553(a) factors.'" *Id.* at 169.

Malone had multiple health issues, including a colostomy bag, kidney disease, diabetes, hypertension, heart issues, malignant neoplasm of the rectum, and liver disorders. *Id.* at 170. During Malone's incarceration, his colostomy bag made him a "pariah" with other prisoners. *Id.*

The Court said, *id.* at 175: "When Malone filed his first motion for compassionate release, [while still incarcerated,] he was sixty-eight years old, struggled with countless physical health ailments related to the aging process (colon-rectal cancer and a permanent colostomy bag, Type II diabetes, morbid obesity, hypertension and hyperlipidemia (both of which required medications),

---

[9] The original sentence of 330 months had previously been reduced to 288 months. *Id.* at 170.

cystic kidney and liver disease), and had served approximately eleven years of his prison sentence." Moreover, the Fourth Circuit noted in *Malone* that "if the district court was determined to keep Malone on home confinement for the five years remaining on his sentence, it would 'not meaningfully advance the purposes of sentencing.'" *Id.* at 177 (quoting *United States v. Gamboa*, 467 F. Supp. 3d 1092, 1102 (D.N.M. 2020)).

The Fourth Circuit was of the view that the BOP's decision to release the defendant to home confinement because he was "at severe risk of contracting COVID-19, due to his health and advanced age," was relevant to the analysis. *Id.* at 175. But, the district court failed to consider the defendant's "worsening health," his "steady decline," or the "additional grave ailments that had developed since sentencing." *Id.* at 174.

Here, the BOP took appropriate measures to safeguard defendant's health by releasing him to home confinement, pursuant to the CARES Act. This Court certainly could "cut the cord" altogether, as the Fourth Circuit made clear in *Malone*, and reduce the defendant's sentence to time served. But, in contrast to the defendant in *Malone*, Smith has not presented any evidence of worsening health conditions while on home confinement. Nor has he shown any impediment to his receipt of medical care due to his home confinement status. At most, it appears that it would be financially advantageous to Smith to be formally released from the BOP, because apparently he would then be eligible for SSI benefits. ECF 1240 at 8.

As discussed, *infra*, the sentencing factors under 18 U.S.C. § 3553(a) counsel against a time-served sentence.

## C.

Smith also maintains that he is entitled to relief under § 3582(c)(1)(A) because of family circumstances, including the desire to care for his son, who is terminally ill and lives in Georgia.

ECF 1240 at 7.  In addition, Smith seeks to care for the two adopted children of his late fiancée.

*Id*.  Given my determination that Smith has established grounds for compassionate release based

on his health, it is not necessary to resolve his alternative grounds.  Nonetheless, I shall briefly

address the contention.

U.S.S.G. § 1B1.13(b)(3) concerns a defendant's "Family circumstances."  Under

§ 1B1.13(b)(3)(A), "[t]he death or incapacitation of the caregiver of the defendant's minor

child . . ." may constitute a compelling reason for the defendant's release.  Amendment 814, which

went into effect in November 2023, expanded compassionate release based on family

circumstances.  The United States Sentencing Commission explains:

> First, this modification expands the existing provision relating to the death
> or incapacitation of the caregiver of a defendant's minor child to include a child
> who is 18 years of age or older and incapable of self-care because of a mental or
> physical disability or a medical condition. Second, the modification adds a new
> provision for cases in which a defendant's parent is incapacitated. Finally, the
> modification adds a second new provision that applies when similar circumstances
> exist with respect to a person whose relationship with the defendant is similar in
> kind to that of an immediate family member.

United States Sentencing Commission, *2023 Amendments in Brief*, at 2, https://perma.cc/6MGU-

7SZQ.

As indicated, defendant asserts that his son lives in Atlanta and is terminally ill.  ECF 1240

at 7.  But, defendant has made no mention of whether his son is a minor.  Nor has he provided

documentation as to his son's medical condition.

Smith also seeks to care for the two adopted children of his late fiancée.  ECF 1240 at 7.

But, defendant has made no mention of whether he has adopted the two children.  Nor has he made

mention of whether these children are minors.

When the PSR (ECF 647) was prepared in 2019, it recounted that Smith had a son then

residing in Atlanta, who was 22 years old at the time.  *See id.* ¶ 57.  He had another son, also age

22, from a different mother. *Id.* ¶ 58. That son, too, resided in Georgia. *Id.* But, there was no mention of a fiancée or her two adopted, minor children. *See* ECF 647.

In any event, it does not appear that defendant's sons are minors. But, the provision applies to minor children or adult children who are incapable of self-care. Moreover, there is no evidence of any incapacitation of a caregiver for either of defendant's sons.

### D.

As discussed, defendant has established a compelling reason for compassionate release, based on his serious health conditions. But, this does not end the Court's inquiry. The Court must also consider the sentencing factors under 18 U.S.C. § 3553(a), "to the extent those factors are applicable." *Bethea*, 54 F.4th at 831; *see Malone*, 57 F.4th at 174; *Hargrove*, 30 F.4th at 194; *High*, 997 F.3d at 186; *Kibble*, 992 F.3d at 330. These factors include: (1) the nature of the offense and the defendant's characteristics; (2) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; (3) the kinds of sentences available and the applicable Guidelines range; (4) any pertinent Commission policy statements; (5) the need to avoid unwarranted sentence disparities; and (6) the need to provide restitution to victims.

Smith maintains that the § 3553(a) sentencing factors warrant his release. He notes, among other things, that he has "not received any type of infraction since being home." ECF 1240 at 7. In my view, the sentencing factors do not support granting the Motion.

As the judge assigned to this case at its inception, I am very familiar with the facts. *See*, *e.g.*, *Bethea*, 54 F.4th at 834. Defendant's conduct was extremely serious. He was the supplier for two separate drug trafficking organizations in Baltimore, involving the distribution of at least one kilogram of heroin. ECF 563 at 11; *id.* ¶ 1. Congress has expressed its view that the drug

quantity involved here warrants a significant punishment; based on the drug quantity at issue, the offense carries a mandatory minimum term of imprisonment of ten years, with a maximum term of life imprisonment. *Id*. ¶ 3.  At sentencing on August 21, 2019 (ECF 643), the Court imposed the agreed upon sentence of 120 months of incarceration, pursuant to Fed. R. Crim. P. 11(c)(1)(C). *See* ECF 645.  Notably, the sentence corresponded to the congressionally mandated minimum sentence.

As noted, the PSR reflects a final offense level of 29.  ECF 647, ¶ 29.  Defendant has a criminal history category of IV. *Id*. ¶ 39.  Smith's advisory sentencing Guidelines called for a sentence ranging from 121 months to 151 months of incarceration. *Id*. ¶ 85.  Thus, the sentence that defendant received was just below the bottom end of the Guidelines.

As part of his Plea Agreement, Smith stipulated that "he possessed firearms in furtherance of his drug trafficking." *Id*. at 11.  In particular, two firearms were recovered from Smith's residence during the execution of a search warrant, along with 2.8 kilograms of heroin. *Id*. at 10–11.  Smith was charged, *inter alia*, with possession with intent to distribute heroin (Count Nine) and with use of a firearm in furtherance of drug trafficking (Count Ten), under 18 U.S.C. § 924(c). The government did not insist on a plea to Count Ten.  But, if the case had gone to trial, and if Smith had been convicted of that offense, he would have faced a mandatory, consecutive period of incarceration under 18 U.S.C. § 924(c).  Pursuant to the Plea Agreement, defendant avoided the prospect of a far lengthier sentence.

The second § 3553(a)(1) factor—defendant's personal history—is troubling, and weighs against release or reduction.  According to the PSR, Smith previously served several sentences in the Maryland penal system. *See id*. ¶¶ 29–36.  During a two-month period in December 1981 and January 1982, when defendant was 18 years old, he committed multiple offenses of daytime

housebreaking, storehouse breaking, and theft. *See id*. ¶¶ 29–34. He received significant sentences, totaling about 30 years. *See id*. ¶¶ 29–34. Smith escaped from prison for four days in 1992. *See, e.g., id*. ¶ 34.

Smith was paroled in December 1996. *Id*. ¶¶ 29–34. Yet, by October 21, 1997, defendant was charged with various drug offenses, and an "FTA warrant" was issued in February 1998. *Id*. ¶ 35. A week later, on October 27, 1997, defendant was charged again with various drug related offenses. *Id*. ¶ 36.

In December 1998, defendant pleaded guilty to maintaining a stash house and to possession of a firearm during the commission of a felony. *Id*. Smith received a total of eight years of incarceration, with all but three years suspended. *Id*.

Following a jury trial in March 2002, defendant was convicted of multiple offenses and sentenced to a total of twenty years of incarceration. *Id*. ¶ 35. At a hearing on a motion for new trial, the court found defendant in contempt three times. *Id*. Defendant was paroled in February 2012. *Id*.

Despite defendant's many prior offenses, and his lengthy periods of incarceration, defendant's prior interaction with the criminal justice system did not deter him from engaging in the serious criminal conduct that culminated in his prosecution in this case. *See* ECF 647, ¶¶ 29–36.

Where appropriate, the district court "must account not only for the circumstances at the time of the original offense but also for significant post-sentencing developments." *United States v. Mangarella*, 57 F.4th 200, 203 (4th Cir. 2023); *see United States v. Martin*, 916 F.3d 389, 397 (4th Cir. 2019); *Kibble*, 992 F.3d at 334 n.3. Courts place significant weight on a defendant's post-sentencing conduct because it "provides the most up-to-date picture of [his] 'history and

characteristics.'" *Pepper v. United States*, 562 U.S. 476, 492 (2011) (citing 18 U.S.C. § 3553(a)(1)).  The court must "at least weigh the [defendant's] conduct in the years since the[] initial sentencing[]."  *McDonald*, 986 F.3d at 412; *see Martin,* 916 F.3d at 397 (requiring an "individualized explanation" as to rehabilitative efforts).  A defendant's behavior while in BOP custody is an important indicator of whether he remains a danger to the community.  *See* 18 U.S.C. § 3582(c)(1)(A)(ii).

Rehabilitation efforts should be considered in regard to a motion for compassionate release. *See United States v. Lancaster*, 997 F.3d 171, 175 (2021) ("And in considering the § 3553(a) factors, the court can take into account a defendant's conduct after his initial sentencing."); *McDonald*, 986 F.3d at 410–12 (noting that on a motion to reduce sentence under the First Step Act, the district court must consider defendant's post-sentencing conduct); *United States v. Randall*, 837 Fed. App'x 1008, 1009 (4th Cir. 2021) ("[A] district court must provide an individualized explanation for denying a sentence reduction motion under the First Step Act when the defendant presents evidence of his post-sentencing rehabilitation."); *United States v. Rudisill*, 834 Fed. App'x 827, 829 (4th Cir. 2021) (finding district judge abused his discretion in denying motion under the First Step Act without addressing defendant's post-sentencing conduct). However, rehabilitation alone does not warrant a defendant's immediate release.  *See United States v. Davis*, No. 21-6960, 2022 WL 127900, at *1 (4th Cir. Jan. 13, 2022) ("[R]ehabilitation alone cannot constitute an extraordinary and compelling reason for release.").

To his credit, defendant has taken educational classes since his sentencing, including while on home confinement.  Smith asserts he has taken classes "that help with resume and job interviews"; he took a commercial driver's license course; and he enrolled in a computer class at

Employment Connection.  ECF 1240 at 7.  Smith describes these classes as "very productive and helpful."  *Id*.

Also of relevance, Smith asserts that he has not had any disciplinary infractions since being released to home confinement on January 30, 2023.  ECF 1240 at 6–7.  But, Smith received three disciplinary infractions during his incarceration of about 57 months.  *See* ECF 736-5.  On March 5, 2020, Smith was sanctioned for refusing to obey an order.  *Id.*  Less than four weeks later, on March 30, 2020, defendant lost his privilege to visitation and the use of the phone for six months, following an incident in which he was insolent to a staff member.  *Id.*  And, on June 9, 2020, Smith was again sanctioned for refusing to obey an order. *Id.*

To be sure, the defendant is entitled to exercise all rights available to him.  But, defendant made an informed and voluntary decision to accept a favorable plea bargain.  At that time, when it served defendant's ends, he took responsibility for his conduct.  Soon after, defendant began to wage a campaign to upend the guilty plea.  *See*, *e.g.*, ECF 756; ECF 847; ECF 891; ECF 919; ECF 978; ECF 1003; ECF 1008; ECF 1020.  This begs the question whether defendant has accepted responsibility for his conduct, and whether he is ready to conform his conduct to societal expectations.  *See United States v. Casteel*, 483 F. Supp. 3d 642, 644 (S.D. Iowa 2020) ("Defendant's lack of remorse raises doubts about whether he 'respect[s] the law,' § 3553(a)(2)(A), and received sufficient 'deterrence,' § 3553(a)(2)(B). This, in turn, suggests the public may not be protected sufficiently should he be released. § 3553(a)(2)(C)."), *aff'd*, 2020 WL 9047238 (8th Cir. Oct. 5, 2020).

Defendant has served approximately 76 months of his 120-month sentence.  Of that time, he spent approximately 57 months in a penal institution.   Given the serious facts of the offense, involving drugs and guns, defendant's lead role in the offense, and the leniency of the original

sentence, which was below the Guidelines and corresponded to the mandatory minimum, coupled with the defendant's prior criminal history, the Court concludes that a time-served sentence under 18 U.S.C. § 3582(c)(1)(A) would seriously undermine respect for the law.

## IV.  Conclusion

I conclude that the factors under 18 U.S.C. § 3553(a) do not weigh in favor of a sentence reduction.  As I see it, the period of incarceration that Smith has served to date is not sufficient to warrant a reduction of his sentence to time served.  For the foregoing reasons, I shall deny defendant's Motion for Compassionate Release (ECF 1125; ECF 1240; ECF 1249).

An Order follows, consistent with this Memorandum Opinion.


Date:  September 5, 2024                          _____/s/_____

                                                 Ellen Lipton Hollander
                                                 United States District Judge